UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON WALKER, | ) | Case No. 1:20-cv-0504 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| ANDREW SAUL, Commissioner | ) | |
| of Social Security | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.   Introduction

Aaron Walker, Plaintiff, seeks judicial review of the final decision of Andrew Saul, the Commissioner of Social Security. The Commissioner denied Walker's application for supplemental security income under Title XVI the Social Security Act. This matter is before me under 42 U.S.C. § 405(g) and Local Rule 72.2(b). Because the ALJ followed proper procedures and his decision is supported by substantial evidence, I recommend that the Commissioner's final decision be AFFIRMED.

## II.   Procedural History

Walker applied for supplemental security income on March 20, 2017. (ECF No. 12 at 34). He alleged a period of disability beginning October 19, 1994. (ECF No. 12 at 34). The Ohio Division of Disability Determination (the "State Agency") initially denied Walker's claim on October 5, 2017. (ECF No. 12 at 34). The State Agency denied it again on August 7, 2017. (ECF No. 12 at 34). Walker then requested a hearing before an ALJ. (ECF No. 12 at 34). ALJ Eric Westley presided over Walker's hearing on November 27, 2018. (ECF No. 12 at 34). Walker appeared through counsel and testified. (ECF No. 12 at 61-81). Paula Zinsmeister testified as an

1

impartial vocational expert. (ECF No. 12 at 81-84).

The ALJ issued his decision on February 12, 2019. (ECF No. 12 at 34-44). He determined that Walker was not disabled under the Social Security Act. (ECF No. 12 at 34-44). Walker timely asked the Appeals Council to review and set aside the ALJ's ruling. (ECF No. 12 at 26). The Appeals Council denied Walker's request on January 14, 2020. (ECF No. 12 at 4-10). Thus, Walker's administrative decision was final as of that date. This timely appeal followed. (ECF No. 1).

### III. Relevant Background

The ALJ's narratives of the relevant hearing testimony, medical evidence, and opinion evidence provide useful background for this Report and Recommendation.

    **A.**    **Walker's Written Submissions and Testimony**

> In his application for benefits, the claimant indicated that multiple conditions limit his ability to work, including respiratory problems, attention deficit hyperactivity disorder (ADHD), learning disability, bad vision and clumsiness (3E/2). At the hearing, the claimant testified that he issues with functioning and comprehending due to a learning disorder. While he lives with his mom and sister, he reported that his social skills are poor and he prefers to be alone. The claimant works 10 hours a week but needs reminders to do his job properly. He testified that he has difficulty understanding and is not seeking any medical treatment for his impairments (hearing testimony). For these reasons, the claimant contends that he is unable to meet the demands of competitive employment on a regular and continuous basis.

(ECF No. 12 at 40).

    **B.**    **Zinsmeister's Vocational Expert Testimony**

> To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the

2

>individual would be able to perform the requirements of representative occupations such as:
>
>1. Hand Packager (DOT #920.587-018), which is generally performed at the medium exertional level with an SVP of 2 (unskilled), with approximately 550,000 positions in the national economy.
>
>2. Store Laborer (DOT #922.687-058), which is generally performed at the medium exertional level with an SVP of 2 (unskilled), with approximately 300,000 jobs in the national economy.
>
>3. Cafeteria Attendant (DOT #311.677-010), which is generally performed at the light exertional level with an SVP of 2 (unskilled), with approximately 100,000 jobs in the national economy.

(ECF No. 12 at 43).

### C. Medical Evidence

>In regards to the claimant's mental impairments, an individualized education plan (IEP) in the record reveals that the claimant had past diagnosis of ADHD and participated in special education programs (IF/3; 2F). His IEPs showed that the claimant had below average reading skills, displayed aggressive and disobedient behaviors, and had communication needs (1F; 2F). As part of a previous application for benefits, the claimant was evaluated by consultative examiner Herschel Pickholtz, Ed. D., on March 14, 2013 (3F). A Wechsler Adult Intelligence Scale – IV testing was administered and rated the claimant's full scale IQ as 75, which Dr. Pickholtz noted was in the low average range of functioning (3F/7). He assessed the claimant as having a learning disorder, ADHD, disruptive behavior disorder and phonological disorder (3F/8).
>
>Although before the adjudicating period, evidence from 2014 shows that the claimant had average comput[ing] skills and had no issues understanding concepts (6F/4-5). However, comments indicate that the claimant had trouble filling out job applications without being helped due to a lackadaisical attitude (6F/19). On April 27, 2017, the claimant underwent a consultative examination with Jorethia Chuck, Ph.D. (8F). The claimant reported troubles with distraction, understanding, patience, and attention (9F/3). He struggles with memory, comprehension, and anxiety (9F/4). Mental status examination notes show that the claimant displayed adequate expressive and receptive language skills, tense affect, depressed

3

>mood, and is easily frustrated (9F/5). Cognitive function testing showed that the claimant could recite [four] digits forward and backward and recite 2 out of 3 objects after a brief delay (9F/5). Dr. Chuck assessed the claimant as having ADHD (9F/6).
>
>On September 26, 2018, the claimant sought psychiatric treatment (12F/2). The claimant stated that he was diagnosed with ADHD as a teenage and currently struggles with concentration and sleep (12F/2). He also has trouble with memory, increased appetite, and passed trauma (12F/2). Mental status examination notes show that the claimant's mood was euthymic, affect full range, cognition was intact and [he had] normal judgment (12F/5). The claimant was assessed as having ADHD due to his concentration and focus difficulties (12F/6).

(ECF No. 12 at 43-44).

### D. Opinion Evidence

>The undersigned accords partial weight to the opinions of the State agency mental medical consultants Karla Delcour, Ph.D., and David Dietz, Ph.D.[] Both Dr. Delcour, on initial determination, and Dr. Dietz, on reconsideration, opined that the claimant had moderate limitations in all four areas of mental functioning, as described above (1A; 3A).The undersigned accords these opinions great weight, as they are consistent with the medical evidence of record. Specifically, the evidence shows that the claimant has problems with concentration, focusing, and understanding, as detailed above (IF; 2F; 3F; 12F). However, aside from education record, the medical evidence of record indicates that the claimant's ability to interact with others is only mildly limited (3F; 9F; 12F). Therefore, only partial weight is accorded.
>
>The undersigned accords partial weight to the opinion of consultative examiner Jorethia Chuck, Ph.D. (9F). On April 10, 2017, Dr. Chuck opined that the claimant's cognitive functioning was estimated to be in the borderline range and the claimant has limitations in understanding, remembering and carrying out instructions and appeared not capable of maintaining attention and concentration (9F/7). Dr. Chuck also opined that the claimant's ability to withstand stresses and pressures of work activities was impaired but he had no limitations interacting with others (9F/7). The undersigned accords this opinion partial weight, as it is consistent with the medical evidence of record in regards to the claimant's ability to maintain attention and concentration (1F; 2Fp; 3F). However, the record also shows a history of aggressive and

4

> disruptive behavior, which would affect his ability to interact with others (1F; 2F). Therefore, the undersigned accords this opinion partial weight.

(ECF No. 12 at 41-42).

## IV. The ALJ's Decision

As is relevant here, the ALJ issued the following findings of fact and narrative analysis:

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)…
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.08 and 12.11…
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. At the hearing, the claimant testified that he has issues with functioning and comprehending due to a learning disorder. While he does have a job where he works 10 hours a week, he needs reminders to do things (hearing testimony). Education records show that the claimant participated in special education classes and had below average reading skills (1F; 2F). Although before the adjudicating period, evidence from 2014 shows that the claimant had average compute skills and had no issues understanding concepts (6F/4-5). During a consultative examination, the claimant could recite 4 digits forward and backward and recite 2 out of 3 objects after a brief delay (9F/5). Review of the medical record indicates that the claimant has a hard time concentrating, focusing and paying attention (12F/2). Considering the totality of the evidence, the undersigned finds that the claimant is moderately limited in his ability to concentrate, persist and maintain pace…
>
> Considering the totality of the evidence, the undersigned finds that the claimant is moderately limited in his ability to adapt and manage himself. Because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied…
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the

> following nonexertional limitations: frequently climb ladders, ropes or scaffolds; frequently crawl; must avoid concentrated exposure to hazards such as unprotected heights, moving machinery, and commercial driving; can understand, remember and carry out simple instructions in a routine work setting with changes that are explained in advance; can respond appropriately to supervisors, coworkers, and work situations if the worker function of the occupation in relation to people is limited to speaking-signaling, serving, or taking instructions, as defined in the SCO…
>
> Considering the objective medical evidence, the undersigned finds that the claimant is limited in his ability to understand, remember and carry out more than simple instructions and interacting with others…
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a)…
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since March 20, 2017, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 12 at 36-44).

## V. Law and Analysis

### A. Standard of Review

The Court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "It is well established that the party seeking remand bears the burden of showing that a remand is proper…" *Oliver v. Sec'y of Health and Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Under this standard of review, a court cannot decide the facts anew, make credibility

6

determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor when testifying."). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Thus, the movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too. *See Greene ex rel. Greene v. Astrue*, No. 1:10-cv-414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion.").

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards, *i.e.*, "fails to follow its own regulations," unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is not

harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[1] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

---

[1] *E.g. Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

**B.     Issues Presented**

Walker raises a single issue on review: "Whether the ALJ's decision is supported by substantial evidence when the residual functional capacity finding is not an accurate assessment of Mr. Walker's specific mental limitations." (ECF No. 14 at 8). But in that single issue, Walker argues three separate things: (1) The ALJ erred as a matter of law by including in Walker's RFC only a restriction to carrying out simple instructions in a work setting, despite finding that Walker was moderately limited in his ability to concentrate, persist, and maintain pace; (2) The RFC should have included Delcour's and Dietz's opinion that Walker "needs flexible break times to attenuate his [psychiatric] symptoms"; and (3) Substantial evidence does not support the ALJ's decision that there are sufficient jobs in the national economy that Walker can do in light of Zinsmeister's overall vocational expert testimony. (ECF No. 14 at 8-11).

**C.     Walker's RFC Reflects His Moderate Limitation in Concentrating, Persisting, and Maintaining Pace**

    **1.     The RFC Restriction to Carrying Out Simple Instructions in a Routine Work Setting**

The ALJ included mental limitations in Walker's RFC, noting that he "[c]an understand, remember, and carry out simple instructions in a routine work setting with changes explained in advance; can respond appropriately to supervisors, coworkers, and work situations if the worker function of the occupation in relation to people is limited to speaking-signaling, serving, or taking instructions, as defined in the SCO." (ECF No. 12 at 39). Walker argues that those restrictions do not adequately address his moderate limitation in his ability to concentrate, persist, and maintain pace. (ECF No. 14 at 10). He supports this argument with the statement that "'courts in this circuit have generally held that an ALJ's hypothetical question or RFC must contain something more than a limitation to simple, repetitive, routine work in order to properly account for a claimant's

9

moderate deficiency in concentration.'" (ECF No. 14 at 10 (quoting *Janda v. Comm'r of Soc. Sec.*, No. 1:12-CV-1250, 2013 WL 3200611 (N.D. Ohio June 24, 2013) and citing *Makan*[2] *v. Comm'r of Soc. Sec.*, No. 5:12-CV-0031, 2013 WL 990824 (N.D. Ohio Mar. 7, 2013))).[3]

The Commissioner asserts that the argument that Walker advances here hinges on a *per se* rule. (ECF No. 15 at 11). The Commissioner disagrees, though, because "'[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace.'" (ECF No. 15 at 11 (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016))). The Commissioner asserts that Walker "does not explain how the facts of this case support additional mental limitations." (ECF No. 15 at 12). And considering all of the evidence, the Commissioner states that Walker "had some difficulties with concentration and focus but remained capable of performing simple tasks that did not require a great deal of social interaction." (ECF No. 15 at 11). Thus, the Commissioner argues that substantial evidence supports the ALJ's conclusion. (ECF No. 15 at 12).

The Court agrees with the Commissioner. As a preliminary point, Walker cites to unreported district court cases that were decided in 2013 and 2014. (*See* ECF No. 14 at 10-11). These cases rely on the Sixth Circuit's holding in *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-

---

[2] On Westlaw, *Makan* is incorrectly titled *Makan v. Covlin* [*sic*].

[3] Walker also argues that "a restriction to changes in the work environment is separately insufficient to account for moderate restriction in concentration and attention." (ECF No. 14 at 11 (citing *Hambrick v. Comm'r of Soc. Sec.*, No. 1:13-CV-374, 2014 WL 1961945, at * 5 (S.D. Ohio May 15, 2014) and *Tolles v. Comm'r of Soc. Sec.*, No. 12-CV-14771, 2013 WL 5707788, at *9 (E.D. Mich. Oct. 21, 2013))). However, this argument also fails for the reasons set forth below. *See Kepke*, 636 F. App'x at 635 (a limitation to simple, routine, repetitive tasks—*i.e.*, simple instructions in a routine work setting—can be sufficient on its own to convey moderate limitations in concentration, persistence, and pace).

17 (6th Cir. 2010). In *Ealy*, the claimant's doctor "specifically limited Ealy's ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.* at 516. The Court found that this limitation was relevant to Ealy's pace, speed, and concentration restrictions that the ALJ found him to have. *Id.* Yet, the hypothetical that the ALJ posed to the vocational expert "omitted these speed- and pace-based restrictions completely." *Id.* As a result, Ealy's limitations "were not fully conveyed to the vocational expert" and were not included in the RFC. *Id.* Thus, the Court found that the ALJ erred and his conclusion "that Ealy was able to perform a substantial number of other jobs was not supported by substantial evidence." *Id.* at 517.

The cases Walker cites in support of his argument interpreted *Ealy* as though it created a *per se* rule that a restriction to simple, routine, repetitive tasks is never adequate to convey a moderate limitation in concentration, persistence, and pace. *E.g. Makan*, 2013 WL 990824 at *2; *Janda*, 2013 WL 3200611 at *5. But after those cases were decided, the Sixth Circuit clarified that *Ealy* did not create a *per se* rule. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014); *Kepke*, 636 F. App'x at 635. In *Smith-Johnson*, the Sixth Circuit held that the ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" conveyed the claimant's moderate limitations in concentration, persistence, and pace because, unlike in *Ealy*, the claimant's doctor "did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Smith-Johnson*, 579 F. App'x at 436-37. Similarly, in *Kepke*, the Sixth Circuit further confirmed that there is no "rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke*, 636 F. App'x at 635. The Sixth Circuit again explicitly distinguished the instant case from *Ealy*:

11

> *Ealy* is distinguishable from Kepke's case, however, because there, one of the claimant's doctors specifically limited his ability to sustain concentration to 'simple repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical…' Kepke, however, has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work.

*Id.* at 635 (citing *Smith-Johnson*, 579 F. App'x at 436-37).

The Court finds *Kepke* and *Smith-Johnson* to be persuasive. Thus, the proper question before the Court is whether the medical evidence compels a specific, concrete restriction on Walker's ability to concentrate, persist, and maintain pace. *Id.* If so, then the *Ealy* analysis controls; if not, then the limitation to "simple instructions in a routine work setting with changes explained in advance" can adequately convey Walker's moderate limitation in his ability to concentrate, persist, and maintain pace.

Walker has not cited to any evidence in the record that provides for specific, concrete limitations on his ability to maintain concentration, persistence or pace while doing simple and routine work. State agency mental medical consultant Dr. Delcour opined that Walker was moderately limited in his ability to concentrate, persist, and maintain pace generally. (ECF No. 12 at 99). Specifically, she noted that Walker had moderate limitations in (1) his ability to carry out detailed instructions; (2) his ability to maintain attention and concentration for extended periods; (3) his ability to work in coordination with or in proximity to others without being distracted by them; and (4) his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (ECF No. 12 at 104). Delcour opined that Walker was "not significantly limited" in all other areas of concentration, persistence, and keeping pace. (ECF No. 12 at 104). At reconsideration, State agency mental medical consultant Dr. Dietz adopted

12

Delcour's findings as written. (ECF No. 12 at 116, 121). And for her part, consultative examiner Dr. Chuck noted that "Walker does not appear capable of maintaining attention and concentration; he could only repeat four digits forward and four backwards. He also experienced difficulty with remembering tasks. Limitations were noted in this area." (ECF No. 12 at 363).

In sum, Delcour, Dietz, and Chuck each authored broad, general opinions. Although the opinions speak to Walker's moderate limitation in concentration, persistence, and maintaining pace, they do not place any concrete functional limitations on those abilities. *Smith-Johnson*, 579 F. App'x at 436-37. It is Walker's burden to point the finder of fact to the evidence in the record that compels more concrete limitations to the RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) (noting that if a Claimant has not established limitations to be included in an RFC by Step Four, then the burden does not shift to the Commissioner to prove an RFC—or its limitations—at Step Five). He has not done so. Thus, as was the case in *Smith-Johnson*, here "the ALJ did not fail to include a restriction on [Walker's] ability to maintain concentration, persistence, or pace while performing simple tasks, and he further reduced the required attention and concentration by restricting [Walker] to routine… tasks." *See Smith-Johnson*, 579 F. App'x at 437.

### 2. Delcour's and Dietz's Opinion on Needing Flexible Break Times

Walker also argues that the RFC "does not address Dr. Delcour's or Dr. Deitz's opinion that Mr. Walker needs flexible break times to attenuate his psychiatric symptoms." (ECF No. 14 at 10 (citing ECF No. 12 at 104, 121)). At a disability hearing, the ALJ "is responsible for assessing … [the claimant's] residual functional capacity." 20 C.F.R. § 416.946(b). The ALJ assesses the claimant's RFC based on the evidence in the record, and "the final responsibility for deciding … [the claimant's RFC] is reserved to the Commissioner." 20 C.F.R. § 404.1527(e). It is well

established that an ALJ is not required to incorporate limitations that are not supported by the record evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The opinion that Walker "needs flexible break times," which concerns Walker's ability to concentrate, persist, and maintain pace, is a broad, general statement. Indeed, neither Delcour nor Dietz explained what the phrase means. (ECF No. 12 at 104, 121). Nor did they explain or cite to the evidence that supported it. (ECF No. 12 at 104, 121). And for his part, Walker did not elicit vocational expert testimony on this statement, nor did he explain is his brief what specific restriction to the RFC it would compel. (*See* ECF No. 14 at 10 (stating only that the RFC "does not address Dr. Delcour's or Dr. Deitz's opinion that Mr. Walker needs flexible break times to attenuate his psychiatric symptoms")). Thus, under the authority discussed above, this opinion does not compel additional RFC restrictions because it does not place a concrete functional limitation on Walker's ability to concentrate, persist, or maintain pace. *Smith-Johnson*, 579 F. App'x at 436-37. Accordingly, the Court concludes that the ALJ did not err by not including in the RFC a restriction for flexible break times.

*Scott v. Saul*, a recent case in this district, supports this conclusion. There, multiple doctors opined that the claimant needed or would benefit from "a flexible break schedule," but the ALJ did not include in the RFC a specific flexible-break-schedule restriction. *Scott v. Saul*, No. 5:18-CV-2897, 2020 WL 2393155, at *2 (N.D. Ohio May 12, 2020). The district court analyzed the doctors' statements and concluded that none of them "shed [any] … light on the meaning of the term 'flexible break schedule'"; nor did any case within the Sixth Circuit.[4] *Id.* at *3. The district

---

[4] The district court did, though, distinguish *Scott* from a case in a sister district in which "two reviewing psychologists opined that a Social Security claimant 'may need an occasional extra break to calm herself.'" *Scott*, 2020 WL 2393155, at *2 (quoting *Howard v. Comm'r of Soc. Sec.*, No. 3:14 CV 364, 2015 WL 8213614, at *3 (S.D. Ohio Dec. 9, 2015)). The district court noted that the need for "an occasional *extra* break" in that case was materially different from the need

14

court concluded that the opinion was "not definitive with regard to the meaning, let alone need, for" a flexible break schedule. *Id.* Thus, as there was no concrete restriction to include in the RFC, and it was not error to not include it. *Id.* So too here.

*     *     *

In conclusion, if the record evidence does not compel a more specific limitation, then a restriction to simple, routine, and repetitive tasks is a sufficient RFC restriction for someone who is moderately limited in their ability to concentrate, persist, and maintain pace. *Kepke*, 636 F. App'x at 635. No evidence, including the need for flexible breaks, compelled a more concrete limitation here. Thus, a reasonable person might accept this evidence as adequate to support an RFC restriction to simple instructions in a routine work setting with changes explained in advance. *Rogers*, 486 F.3d at 241. Accordingly, substantial evidence supports the RFC. *Id.*

### D. Vocational Expert Testimony on Being Off Task and Absent

Walker also implicitly argues that there is not sufficient evidence in the record to support the ALJ's finding that there are sufficient jobs in the national economy that Walker can perform. (ECF No. 14 at 11). Walker does so by noting that the ALJ elicited vocational expert testimony from Zinsmeister about whether there is sufficient work for someone "who would be off task 20 percent of the time" or "absent two times per month, on an ongoing basis." (ECF No. 14 at 11 (citing ECF No. 12 at 83)). Walker then notes that Zinsmeister testified that an individual with either of these limitations would not be able to work. (ECF No. 14 at 11 (citing ECF No. 12 at 82-84)).

As discussed above, the ALJ is responsible for fashioning the claimant's RFC. 20 C.F.R.

---

for "a flexible break schedule" in *Scott*. *Id.* (emphasis added). So too here, as no evidence calls for Walker needing an additional break, or any other specific break schedule.

15

§ 416.946(b); 20 C.F.R. § 416.927(e). In doing so, the ALJ may pose various hypothetical questions to the vocational expert. *Casey*, 987 F.2d at 1235. But the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Id.* The ALJ did not find that Walker would be off-task or absent 20 percent of the time or absent two times per month, so the ALJ did not include it in the RFC. And Walker does not argue that the ALJ should have included it in the RFC. Thus, the ALJ did not err by not addressing this portion of Zinsmeister's testimony in the RFC.

Concerning the ALJ's reliance on Zinsmeister's overall opinion that Walker could find work, Zinsmeister opined that someone with Walker's RFC could be employed as a hand packager, store laborer, and cafeteria attendant. (ECF No. 12 at 82-83). It is well established that "[a] vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). The Court has concluded that substantial evidence supports the RFC as the ALJ fashioned it. And the ALJ's first hypothetical mirrored the RFC in this case. (*Compare* ECF No. 12 at 82-83 ("[A]ssume a hypothetical individual who can carry out simple instructions in a routine work setting with changes that are explained in advance; and can respond appropriately to supervisors, co-workers, and work situations … [if t]he worker function of the occupation, in relation to people, is limited to speaking, signaling, serving, or taking instructions … [as] defined in the SCO.") *and* at 39 ("[Walker] can … carry out simple instructions in a routine work setting with changes that are explained in advance; can respond appropriately to supervisors, coworkers, and work situations if the worker function of the occupation in relation to people is limited to speaking-signaling, serving, or taking instructions, as defined in the SCO.")). Thus, Zinsmeister's

16

vocational expert opinion is itself substantial evidence for the ALJ's Step 5 conclusion that there are jobs that exist in significant numbers in the national economy that Walker could do despite his limitations. *Smith*, 307 F.3d at 378.

## VI. Recommendation

Because the ALJ followed proper procedures and his decision is supported by substantial evidence, I recommend that the Commissioner's final decision be AFFIRMED.

DATED: April 2, 2021

*CarmenHenderson*
Carmen E. Henderson
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).